UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MONITRONICS INTERNATIONAL, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:16-cv-960-B |
| | § | |
| FIRST MERCURY INSURANCE CO., | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT
## FOR DECLARATORY JUDGMENT

Pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. §2201, plaintiff Monitronics International, Inc. ("Monitronics") files this first amended complaint seeking a declaratory judgment against defendant First Mercury Insurance Co. ("First Mercury"), as follows:

## I. PRELIMINARY STATEMENT

1.1    This is a declaratory judgment action regarding insurance coverage. The insured, Monitronics, seeks a declaration regarding the parties' rights and obligations under several insurance policies issued by First Mercury, including a declaration that First Mercury is required to provide a defense and, ultimately, indemnification in numerous lawsuits (the "TCPA Actions"),[1] the vast majority of which were subsequently consolidated into multi-district

---

[1] *Diana Mey, et al. v. Monitronics International, Inc., et al.*, No. 5:11-cv-00090, United States District Court, Northern District of West Virginia (Wheeling); *Janet Hodgin and Michael Hodgin, et al. v. Monitronics International, Inc., et al.*, No. 2:13-cv-00321, United States District Court, Western District of Washington (Seattle)*; Kerry O'Shea, et al. v. Monitronics International, Inc., et al.*, No. 8:13-cv-01054, United States District Court, Central District of California (Santa Ana); *Diana Mey, et al. v. Honeywell International, Inc., et al.,* No. 2:12-cv-01721, United States District Court, Southern District of West Virginia (Charleston); *Scott Dolemba, et al. v. Monitronics International, Inc., et al.,* No. 1:14-cv-01955, United States District Court, Northern District of Illinois (Chicago); *Sandra Fairley v. Monitronics International, Inc.*, No. 1:14-cv-00525, United States District Court, *(cont.)*

litigation styled *In Re Monitronics International, Inc.*, Telephone Consumer Protection Act Litigation, Civil Docket No. 1:13-MD-02493—IMK-MJA, pending in the U.S. District Court, Northern District of West Virginia (the "MDL").[2] The combined limits of the First Mercury policies triggered by the TCPA Actions total $32 million.

1.2     First Mercury initially acknowledged its duty to defend subject to a reservation of rights and has paid a portion of Monitronics' defense costs for the TCPA Actions. One day after this lawsuit was filed, however, First Mercury filed a declaratory judgment action against

*(cont.)*

Northern District of Ohio (Cleveland); *Jason Bennett, et al. v. Monitronics International, Inc., et al.*, No. 1:14-cv-00054, United States District Court, Southern District of Alabama (Mobile); *Keith Finklea, et al. v. Monitronics International, Inc., et al.*, No. 3:14-cv-00153, United States District Court, Southern District of Texas (Galveston); *Todd C. Bank, et al. v. Alliance Security, Inc., Monitronics International, Inc., et al.*, No. 1:14-cv-04410, United States District Court, Eastern District of New York (Brooklyn); *Phillip Charvat v. Monitronics Int'l., Inc., et al.*, No. 2:14-cv-01366, United States District Court, Southern District of Ohio (Columbus); *Nicholas Shreders, Jonathan Mraunac, and Vincent Brizgys, et al. v. UTC Fire & Securities America Corporation, Inc., et al.*, No. 1:14-cv-01539, United States District Court, Northern District of Illinois (Chicago); *Craig Cunningham v. Alliance Security, et al.*, No. 3:14-cv-00769, United States District Court, Middle District of Tennessee (Nashville); *Craig Cunningham v. The Altitude Group, LLC, et al.*, No. 3:15-cv-00929, United States District Court, Middle District of Tennessee (Nashville); *George Cain, et al. v. Monitronics International, Inc.*, No. 8:13-cv-01859, United States District Court, Central District of California (Santa Ana); *Merrill Primack v. Monitronics International, Inc.*, No. 1:13-cv-07253, United States District Court, Northern District of Illinois (Chicago); *Merrill Primack v. Monitronics International, Inc.*, No. 1:14-cv-06367, United States District Court, Northern District of Illinois (Chicago); *Michael C. Worsham v. Monitronics International, Inc.*, No. 1:15-cv-02139-GLR, United States District Court, District of Maryland (Baltimore); *Michael C. Worsham v. Monitronics International, Inc. and Alliance Security, Inc.*, No. 1:16-cv-00600-GLR, United States District Court, District of Maryland (Baltimore); *James Giles v. ISI Alarms NC Inc., et al.*, No. 1:13-cv-02277, United States District Court, Northern District of Georgia (Atlanta); *Merrill Primack, et al. v. United Technologies Corp. and Monitronics International, Inc.*, No. 1:16-cv-04069, United States District Court, Northern District of Illinois (Chicago); *Michael Worsham v. Alliance Security, Inc. and Monitronics International, Inc.*, No. 901-000123-2016, District Court for Harford County, Maryland; *Mark Fitzhenry v Monitronics International, Inc.*, No. 2012-cv-1010600295; Charleston County, South Carolina Magistrate Court; *Mark Fitzhenry v. Monitronics International, Inc. et al*, No. 2012-cv-1010600656; Charleston County, South Carolina Magistrate Court; and *Mark Fitzhenry v. Monitronics International, Inc., et al.*, No. 2012-cv-1010600799; Charleston County, South Carolina Magistrate Court.

[2] The following cases have not been consolidated into the MDL, but also implicate First Mercury's coverage obligations under the policies: *Hurst, et al. v. Monitronics International, Inc.*, No. 1:15-cv-01844, United States District Court, Northern District of Georgia (Atlanta); *Valerie Colletti v. Monitronics International, Inc.*, No. 0:15-cv-04838-TLW, United States District Court, District of South Carolina (Rock Hill), *Vikki Redden v Monitronics International, Inc.*; No. 5:14-cv-27757, United States District Court, Southern District of West Virginia (Beckley).

Monitronics styled *First Mercury Insurance Company v. Monitronics International, Inc., et al.,* Civil Action No. 16-C-258, pending in the Circuit Court of Cabell County, West Virginia, asking the West Virginia court to declare First Mercury has no duty to defend or indemnify Monitronics in the TCPA Actions.

1.3     As such, Monitronics asks this Court to declare that First Mercury has a duty to defend the TCPA Actions and to continue paying defense costs based on the plain language of the insurance contracts. Monitronics further requests a declaration that neither the policies nor applicable law permit First Mercury to recoup defense costs paid on Monitronics' behalf in connection with the TCPA Actions. Upon the conclusion of the TCPA Actions, Monitronics also asks this Court to declare that First Mercury owes a duty to indemnify Monitronics in the TCPA Actions. Although the duty to indemnify accrues when the underlying TCPA Actions are resolved by judgment or settlement, the policies, the Texas Insurance Code, and applicable common law place on First Mercury an obligation, prior to settlement or judgment, to attempt in good faith to effectuate a prompt, fair and equitable settlement of claims with respect to which the insurer's liability has become reasonably clear and to act as a reasonably prudent insurer in the settlement of the TCPA Actions.

1.4     Although Monitronics has consistently responded to First Mercury's reasonable requests for information about the TCPA Actions, First Mercury has complained that Monitronics has failed, in violation of the policies, to provide *all* the information requested. Faced with First Mercury's threats of non-compliance with the policies' requirements and claims of prejudice, Monitronics seeks a judicial declaration regarding the parties' rights and obligations. Specifically, Monitronics asks the Court to declare that the policies do not require it to provide First Mercury with: (a) information that has already been provided to First Mercury;

(b) information regarding other lawsuits for which First Mercury has denied coverage; (c) information regarding other litigation that does not even involve Monitronics; (d) information that is publicly available; (e) information that does not presently exist; and (f) information protected from disclosure by the attorney-client privilege and work product protections.

1.5    First Mercury has also refused to pay expenses associated with work performed by Monitronics' defense counsel to comply with the insurer's requests for information. In this regard, Monitronics seeks a declaration that First Mercury is required to compensate Monitronics' defense counsel for work performed at the insurer's direction.

1.6    Finally, First Mercury seeks to abandon its duties to defend and indemnify Monitronics prior to resolution of the TCPA Actions by foisting those obligations onto third parties who may or may not, at some point in the future, have contractual obligations to indemnify Monitronics for its as-of-yet undetermined liability in the TCPA Actions. First Mercury's position is unsupported by the Policies. As such, Monitronics seeks a declaration that the insurer has no present right under the Policies or applicable law to assert claims for indemnity or contribution against third parties based on a theory that First Mercury owns Monitronics' indemnity rights, if any, against those third parties.

## II. PARTIES

2.1    Plaintiff Monitronics International, Inc. is a Texas corporation with its principal place of business in Dallas, Texas.

2.2    Defendant First Mercury Insurance Company is a surplus lines carrier eligible to engage in business in Texas and a Delaware corporation with its principal place of business in Michigan. Pursuant to Texas Insurance Code § 804.106, service may be made on the Texas

Secretary of State, P.O. Box 12079, Austin, Texas 78711-2079, who shall forward a copy of

Plaintiff's First Amended Complaint for Declaratory Judgment to:

> Marcia M. Paulsen
> Vice President
> 29621 Northwestern Hwy.
> Southfield, Michigan 48034
>
> and
>
> Marcia M. Paulsen
> Vice President
> 26600 Telegraph Rd.
> Southfield, Michigan 48033.

## III. JURISDICTION

3.1     Monitronics and First Mercury are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. First Mercury seeks to avoid its obligations under insurance policies with combined limits totaling $32 million. The plaintiffs in the underlying TCPA Actions seek damages in excess of these policy limits. Defense costs paid to date, which First Mercury seeks to recoup from Monitronics, exceed $75,000. This Court therefore has jurisdiction over the lawsuit pursuant to 28 U.S.C. §1332(a).

## IV. VENUE

4.1     Venue is proper in this Court under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to Monitronics' claims occurred in this district.

## V. CONDITIONS PRECEDENT

5.1     All conditions precedent set forth in the applicable insurance contracts have been performed or have occurred, as required by FED. R. CIV. P. 9(c).

## VI. FACTS

6.1     First Mercury issued nine (9) policies applicable to the TCPA Actions. Specifically, six (6) primary commercial general liability policies – Policy Nos. FMMI011473, FMMI014425, FMMI014425-2, FMMI014425-3, FMMI023427, FMMI026359 – were issued to Monitronics by First Mercury covering consecutive policy periods from August 31, 2006 to August 31, 2012 (the "Primary Policies"). First Mercury also issued three (3) umbrella policies, Policy Nos. CUMI000723, CUMI001047 and CUMI001352 covering consecutive policy periods from August 31, 2009 to August 31, 2012 (the "Excess Policies"). True and correct copies of these policies (the "Policies") are attached as Exhibit A.

6.2     The Primary Policies contain insuring clauses that read, in relevant part:

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

a.  We will pay those sums that the insured become legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal injury" or "advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or offense and settle any claim or "suit" that may result[.]

\*\*\*

b.  This insurance applies to:

(1) "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

(2) "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services; but only if the offense was committed in the "coverage territory" during the policy period.

6.3     The Primary Policies contain pertinent definitions, as follows:

**SECTION V — DEFINITIONS**

1.  "Advertising injury" means injury arising out of one or more of the following offenses:

\*\*\*

    b.  Oral or written publication of material that violates a person's right of privacy;

\*\*\*

13. "Personal injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

\*\*\*

    e.  Oral or written publication of material that violates a person's right of privacy.

6.4     The Primary Policies also contain an endorsement that reads:

**ERRORS AND OMISSIONS**

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

Subject to all of the terms, limitations, exclusions and conditions of the policy and all the endorsements attached thereto, we will pay on behalf of the Insured those sums which the Insured shall become legally obligated to pay as damages resulting from the negligent acts, errors or omissions of the named Insured and arising out of the operations of the named Insured to which this insurance applies.

6.5     The Excess Policies contain an insuring clause that reads, in relevant part:

**COVERAGE   B.   PERSONAL   AND   ADVERTISING   INJURY LIABILITY**

**1.  Insuring Agreement**

    a.  We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "personal advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "personal and advertising injury" when the "underlying

insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. At our discretion, we may investigate any offense that may involve this insurance and settle any resultant claim or "suit", for which we have the duty to defend[.]

\*\*\*

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

6.6    The Excess Policies contain pertinent definitions, as follows:

**SECTION V — DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters[.]

\*\*\*

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

\*\*\*

e. Oral or written publication, in any manner, of material that violates a person's right of privacy[.]

6.7    The 2011-2012 excess policy also contains an endorsement that reads:

**ERRORS AND OMISSIONS**

**COMMERCIAL UMBRELLA LIABILITY COVERAGE**

Subject to all of the terms, limitations, exclusions and conditions of the policy and all the endorsements attached thereto, we will pay on behalf of the Insured those sums which the Insured shall become legally obligated to pay as damages resulting from the negligent acts, errors or omissions of the

named Insured and arising out of the operations of the named Insured to which this insurance applies.

6.8    First Mercury has a duty to defend and, ultimately, a duty to indemnify Monitronics in any lawsuit seeking damages potentially covered under the Policies.

6.9    Claims within the scope of coverage are alleged in each of the TCPA Actions, triggering First Mercury's defense obligations under each of the Policies. Specifically, plaintiffs in the underlying TCPA Actions allege that telemarketing calls were placed by or at the direction of various defendants, including Monitronics, through automated telephone dialing systems ("ATDS") and pre-recorded/artificial voice calls, or to numbers listed on the nationwide "Do Not Call Registry," violating the Telephone Consumer Protection Act ("TCPA"). Plaintiffs in the TCPA Actions generally allege that various home security dealers placed illegal calls, in violation of the TCPA, on behalf of alarm manufacturers or Monitronics for the purpose of selling home alarm and security monitoring systems. For instance, plaintiffs in the MDL allege in their Second Amended Master Consolidated Complaint (the live pleading) that:

> "Beginning in July of 2012, Plaintiff Phillip J. Charvat received numerous live and prerecorded/ADTS calls from [a dealer] attempting to sell him alarm systems manufactured by [an alarm manufacturer], and alarm monitoring services provided by Monitronics."

> "Beginning October 26, 2011, Ms. Mey received a series of calls, some from numbers with blocked caller IDs, from callers purporting to be calling from [an alarm manufacturer] and Monitronics."

> "… since June of 2012, Ms. Bowler has received numerous illegal prerecorded message calls from or at the direction of: …. b. Monitronics Authorized Dealers for the purpose of selling or promoting the sale of Monitronics alarm-monitoring services."

These and similar allegations throughout the complaints in the TCPA Actions clearly trigger First Mercury's duty to defend under each of the Policies.

6.10    In their prayer for relief, the MDL plaintiffs seek a $500 award for violations of the TCPA that are not willful or knowing, along with a $1,500 penalty for willful or knowing violations.

6.11    Monitronics timely submitted the TCPA Actions for a defense and coverage under the Policies. First Mercury accepted the defense for most, but not all, of the TCPA Actions.[3]

6.12    First Mercury has asserted that exclusions preclude coverage for the TCPA Actions under the Primary Policies, as follows:

**2. Exclusions**

This insurance does not apply to:

a.   "Personal injury" or "advertising injury":

(1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(2) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(3) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured;

***

**EXCLUSION — WILLFUL VIOLATION OF PENAL STATUTE OR ORDINANCE**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART
ERRORS AND OMISSIONS COVERAGE PART**

Notwithstanding anything to the contrary in the policy to which this endorsement attaches, or in any endorsement scheduled on the declaration

---

[3] Monitronics is presently evaluating First Mercury's coverage denials.

of this policy, or in any endorsement subsequently attached to this policy, it is agreed that this insurance does not apply to "bodily injury," "property damage," "personal and advertising injury," or errors or omissions arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the "insured." There shall be no duty or obligation on the part of the Company to respond to, investigate, or defend the insured from any such claim, demand or suit.

6.13    First Mercury also asserts the following exclusion precludes coverage under the

2011-2012 Primary Policy:

## EXCLUSION — PUNITIVE OR EXEMPLARY DAMAGES

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to any claim for punitive or exemplary damages, fines or penalties imposed by law, restitution or any damages which are a multiple of, or in addition to, compensatory damages including related interest or costs whether or not such damages, related interest or costs are characterized as punitive or exemplary damages (hereinafter referred to as punitive or exemplary damages). If a "suit" shall have been brought against the insured for a claim falling within the coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, then the company will afford a defense to such action, however, the company shall not have an obligation to pay for any costs, interest, or damages attributable to punitive or exemplary damages.

6.14    First Mercury asserts the following exclusions in the Excess Policies preclude

coverage for the TCPA Actions:

## 2.  Exclusions

This insurance does not apply to:

a.    "Personal injury and advertising injury":

### (1) Knowing Violation Of Rights Of Another

Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury"

**(2)  Material Published With Knowledge Of Falsity**

> Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**(3)  Material Published Prior to Policy Period**

> Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

***

## EXCLUSION — WILLFUL VIOLATION OF PENAL STATUTE OR ORDINANCE

This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA COVERAGE

Notwithstanding anything to the contrary in the policy to which this endorsement attaches, or in any endorsement scheduled on the declarations of this policy, or in any endorsement subsequently attached to this policy, it is agreed that this insurance does not apply to "bodily injury," "property damage," "personal and advertising injury," or errors or omissions arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the "insured." There shall be no duty or obligation on the part of the Company to respond to, investigate, or defend the insured from any such claim, demand or suit.

***

6.15    None of the exclusions in the Policies negate First Mercury's duty to defend. While certain exclusions may ultimately limit First Mercury's duty to indemnify, none of the exclusions upon which First Mercury relies fully negates the duty to indemnify, to the extent that duty can be determined at this juncture. In addition, First Mercury seeks reimbursement of attorneys' fees, costs, disbursements, and other expenses incurred by First Mercury in the defense of Monitronics in the TCPA Actions, which is not permitted under applicable law or by the Policies.

6.16    Shortly after undertaking the defense of the TCPA Actions, First Mercury adjusters began requesting information from Monitronics. In response to First Mercury's requests, Monitronics has provided considerable information relating to the TCPA Actions. Monitronics has provided pleadings, status reports, key documents, and correspondence relating to the TCPA Actions promptly and routinely when requested by First Mercury. In many instances, Monitronics has provided the same information multiple times in response to repeated, duplicative requests. Monitronics' counsel has also offered to provide information in different formats, provide additional information, or schedule a telephone call to address particular items of interest.

6.17    Unsatisfied with Monitronics' efforts, First Mercury contends that Monitronics owes "full cooperation" under the Policies, insisting that Monitronics provide the insurer with confidential and privileged communications with independently-engaged lawyers and consultants, along with unreasonably detailed information regarding the defense of the TCPA Actions and information regarding unrelated matters. First Mercury bases its demands on the following provision in the Policies:

**SECTION IV—COMMERCIAL GENERAL LIABILITY CONDITIONS**

2.  Duties In The Event of Occurrence, Offense, Claim Or Suit

*** 

c.  You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connections with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

6.18    These provisions in the Policies do not mandate compliance with unreasonable or excessive requests for information. The cooperation contemplated by the Policies also does not require Monitronics to jeopardize the confidentiality of privileged attorney-client communications and attorney work product.

6.19    Certain of First Mercury's requests are premature. For example, the insurer's strident demands for materials relating to experts and damages analyses ignore Monitronics' repeated explanations that its damages expert's analysis is underway but not yet complete. Monitronics has provided First Mercury with a copy of the plaintiffs' expert report in the MDL. On the defense side, however, opinions have not yet been formulated and no reports have been produced. First Mercury continues to demand this non-existent information, insisting that its rights are prejudiced by Monitronics' failure to comply.

6.20    First Mercury's demands for information relating to experts, as well as other requests, also seek to invade the attorney-client privilege and work-product protections. First Mercury insists on receiving "*all information and documents* pertaining to experts (whether retained to testify or otherwise)," claiming that Monitronics' failure to produce privileged communications with independently-engaged lawyers and consultants—*who are not working on the TCPA Actions*—is "causing significant prejudice to First Mercury." First Mercury also wants "[a]ll analyses of expert reports," including "informal analysis and discussion of opposing expert reports and interaction with experts for Monitronics," claiming this privileged information "is owed as an obligation to [Monitronics'] insurer."

6.21    Other requests propounded by First Mercury are simply unreasonable. For example, the insurer has requested "agendas and summaries" of defense counsel's conference calls, reflecting "the nature of tasks completed / ongoing / projected or the timeframes for their performance." Further, First Mercury requests information regarding administrative proceedings against *other parties*. This type of information is not relevant, much less necessary, to First Mercury's evaluation of Monitronics' potential exposure in the TCPA Actions.

6.22    Faced with requests of this nature, Monitronics has properly limited the scope of its responses. An actual controversy exists between the parties because First Mercury continues to press for "full cooperation" with its unreasonable demands, arguing that Monitronics' non-compliance violates the Policies' requirements and has caused prejudice to First Mercury.

6.23    Only *after* First Mercury has discharged its contractual obligations to defend and indemnify Monitronics in the TCPA Actions do the Policies permit First Mercury to recover all or part of payments made on Monitronics' behalf, as follows:

**8.  Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of *any payment we **have made*** under this Coverage Part, those rights are transferred to us.  The insured must do nothing after loss to impair them.  At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

(Emphasis added.) This provision does not give First Mercury the right to abandon its duties to defend and indemnify Monitronics under the Policies prior to resolution of the TCPA Actions, and foist those obligations onto a third party who may or may not, at some point in the future, have a contractual obligation to indemnify Monitronics for its as-of-yet undetermined liability in the TCPA Actions. First Mercury's attempt to evade its contractual and legal obligations finds no support in the Policies or applicable law and is detrimental to the interests of its insured.

## VII. CAUSE OF ACTION FOR DECLARATORY RELIEF

7.1     Monitronics incorporates each and every allegation set forth above.

7.2     An actual, bona fide controversy exists between Monitronics and First Mercury, requiring a judicial declaration by this Court of the parties' rights and duties under the Policies. Under the plain language of the Policies, First Mercury is obligated to defend and, ultimately, indemnify Monitronics in the TCPA Actions. First Mercury seeks to avoid its obligations under the Policies. The parties also disagree about whether Monitronics is required to provide information that has already been provided to First Mercury, information relating to litigation against Monitronics for which First Mercury is providing neither a defense nor indemnity, information relating to litigation to which Monitronics is not even a party, information that is publicly available, information that does not yet exist, privileged communications and work product relating to the TCPA Actions, privileged communications and work product of independently-engaged lawyers and consultants, and unreasonably detailed information and materials relating to the defense of the TCPA Actions. Finally, the parties have a dispute regarding the scope of First Mercury's subrogation rights—namely, whether First Mercury can avoid its duties to defend and indemnify Monitronics in the TCPA Actions by foisting those responsibilities onto third parties who may or may not, at some point in the future, have a duty to indemnify Monitronics against its as-of-yet undetermined liability in the TCPA Actions.

7.3     Monitronics respectfully requests that the Court enter judgment against First Mercury regarding the rights and obligations of the parties under the Policies and protecting Monitronics as requested below.

## VIII. JURY DEMAND

8.1     Monitronics demands a trial by jury.

## IX. RELIEF REQUESTED

9.1     Monitronics respectfully requests that the Court enter judgment against First Mercury as follows:

      a.     declaring First Mercury has a duty to defend Monitronics in the TCPA Actions;

      b.     declaring that First Mercury must promptly pay to Monitronics all attorneys' fees and costs incurred by Monitronics in defense of the TCPA Actions;

      c.     declaring First Mercury has a duty to indemnify Monitronics in connection with the TCPA Actions and that, pending a resolution of the TCPA Actions, First Mercury has obligations under the Policies, the Texas Insurance Code, and applicable common law to attempt in good faith to effectuate a prompt, fair and equitable settlement of claims with respect to which the insurer's liability has become reasonably clear and to act as a reasonably prudent insurer in the settlement of the TCPA Actions;

      d.     declaring that First Mercury has no right to reimbursement of the defense costs or settlements paid on behalf of Monitronics;

      e.     declaring that the Policies do not obligate Monitronics to furnish First Mercury documents and information related to litigation outside of the TCPA Actions and for which First Mercury is not providing coverage;

      f.     declaring that the Policies do not require Monitronics to furnish First Mercury with privileged attorney-client communications or attorney work product in connection with the defense of the TCPA Actions and protecting Monitronics from production of privileged or protected information;

      g.     declaring that the Policies do not require Monitronics to furnish First Mercury with privileged attorney-client communications or attorney work product in connection with work performed by independently-engaged lawyers and consultants and protecting Monitronics from production of privileged or protected information;

      h.     declaring that the Policies do not require Monitronics to furnish First Mercury with unreasonably detailed information pertaining to the defense of the TCPA Actions;

      i.     declaring that First Mercury has an obligation to pay Monitronics' defense counsel for work performed at First Mercury's request;

      j.     declaring that First Mercury cannot avoid its duties to defend and indemnify Monitronics in the TCPA Actions by foisting those responsibilities onto third parties who may or may not, at some point in the future, have a duty to indemnify Monitronics against its as-of-yet undetermined liability in the TCPA Actions;

k.      awarding Monitronics its attorneys' fees incurred herein plus interest on those fees at the highest rate allowed by law from the date of entry of judgment until paid in full;

l.      awarding Monitronics all costs of the suit herein; and

m.      awarding Monitronics all other and further relief as the Court may deem appropriate.

Dated: May 3, 2016                      Respectfully submitted,

By: /s/ *Amy Elizabeth Stewart*
    Amy Elizabeth Stewart
    State Bar No. 00784350
    amy@amystewartlaw.com
    Shelbi L. Barnhouse
    State Bar No. 24027276
    shelbi@amystewartlaw.com
    Marisa L. Jeffrey
    State Bar No. 24075611
    marisa@amystewartlaw.com
    AMY STEWART PC
    5307 E. Mockingbird Lane, Suite 425
    Dallas, Texas 75206
    (214) 233-7076 – telephone
    (214) 975-2806 – facsimile

**ATTORNEYS FOR PLAINTIFF**

4840-1976-1457, v. 1